IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JOHN W. HANSON III | : | |
| Plaintiff, | | |
| v. | : | Case No. 3:24-cv-276 |
| JEFF SCHMITT AUTO GROUP, et al., | : | JUDGE WALTER H. RICE |
| Defendants. | : | |

DECISION AND ENTRY SUSTAINING THE MOTION TO DISMISS (DOC. #31) FILED BY DEFENDANTS JEFF SCHMITT AUTO GROUP, JAY SCHMITT, TONY BROADSTONE, NICK SMITH, NICK MARKOFF, HUNTER ALSIP, RICHARD ROE 1, RICHARD 2 AND TOM GREEN; OVERRULING ALL OTHER MOTIONS AS MOOT; JUDGMENT TO ENTER IN FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF, DISMISSING PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE (DOC. #22); TERMINATION ENTRY

Before the Court are six motions, five of which are ripe for review. First is a Motion to Dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), filed by Defendants Jeff Schmitt Auto Group, Jay Schmitt, Tony Broadstone, Nick Smith, Nick Markoff, Hunter Alsip, Richard Roe 1, Richard Roe 2, and Tom Green (collectively "the Dealership Defendants"). Doc. #31. Plaintiff John W. Hanson III ("Plaintiff"), filed a response in opposition, Doc. #39, and the Dealership Defendants filed a reply in support of the motion. Doc. #41. Plaintiff filed a sur-reply to the motion without seeking leave of Court. Doc. #47. The Dealership

Defendants filed a second motion asking the Court to strike Plaintiff's sur-reply to their Motion to Dismiss. Doc. #48. Plaintiff filed a response in opposition to this motion as well. Doc. #50. The Dealership Defendants did not file a reply brief in the time allotted for such a filing and have therefore waived their reply.

The third motion before the Court is a Motion to Dismiss filed by Defendants General Motors LLC ("GM"). Doc. #36. Plaintiff filed a response in opposition, Doc. #49, and GM filed a reply in support of the motion. Doc. #51. Plaintiff filed a sur-reply to the motion without seeking leave of Court. Doc. #52.

The fourth motion before the Court is a Motion to Enter Default Judgment against ESIS, Inc. GM Claims Unit ("ESIS") filed by Plaintiff. Doc. #38. ESIS filed a response in opposition. Doc. #44. Plaintiff did not file a reply brief in the time allotted for such a filing and have therefore waived their reply.

The final motion before the Court is a Motion to Amend the Caption to Identify the Proper Defendant filed by Plaintiff. Doc. #40. No party filed a response to the motion in the time allotted for such a filing and have therefore waived their response.

All five motions are ripe for review. There is a sixth motion filed by ESIS, seeking dismissal for improper service, lack of personal jurisdiction, and failure to state a claim. Doc. #53. However, this motion is not yet ripe for decision. A seventh motion remains pending on the docket filed by Plaintiff, asking the Court to

reconsider an extension previously granted allowing the Dealership Defendants additional time to file their responsive pleading to Plaintiff's Third Amended Complaint. Doc. #29.

For the reasons discussed herein, the Dealership Defendants' Motion to Dismiss, Doc. #31, is SUSTAINED, and all other motions are OVERRULED AS MOOT.

I. **Legal Standard**

A challenge to the subject matter jurisdiction of the United States District Court under Rule 12(b)(1) of the Federal Rules of Civil Procedure may either be facial or factual. *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012). A facial challenge requires all the plaintiff's allegations to be accepted as true, "much as with a Rule 12(b)(6) motion." *Id.* In contrast, a factual challenge to the court's subject matter jurisdiction allows the court to "weigh evidence to confirm the existence of the factual predicates for subject matter jurisdiction," without presuming the truth of the allegations. *Id.* (citing *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)). "Making this 'crucial distinction, often overlooked,' is essential to determining the proper standard of review to apply." *Lockhart v. Garzella*, No. 3:19-cv-405, 2022 WL 1046766, at *5 (S.D. Ohio Apr. 7, 2022) (Rice, J.) (quoting RMI Titanium, 78 F.3d at 1134).

3

Here, Defendants' challenges to this Court's subject matter jurisdiction are purely legal. As such, the Court will assume all of Plaintiff's factual allegations to be true, as with the standard of review for a motion made under Rule 12(b)(6).

## II. Procedural and Factual Background

Plaintiff purchased a Chevrolet Corvette C8 from Defendant Jeff Schmitt Auto Group on August 30, 2021. Doc. #22, PageID #154. During the next 14 months, Plaintiff experienced issues with the car's wheels, necessitating Plaintiff to have the dealership service his car. This included a servicing done on October 17, 2022. The following day, October 18, 2022, the car experienced a mechanical failure while driving on the highway, causing Plaintiff to crash and suffer injuries. *Id.* at PageID #155–56.

Plaintiff brings eight claims against Defendants: Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ("Count One"); Negligence ("Count Two"); Violation of the Product Liability Act of 1994, 15 U.S.C. § 2301[1] ("Count Three"); Breach of Contract ("Count Four"); Misrepresentation ("Count Five"); Vandalism and Intentional Infliction of Property Damage ("Count Six"); Insurance Fraud

---

[1] Plaintiff's third claim contains a reference to the "Product Liability Act of 1994" and a citation to the same Magnuson-Moss Warranty Act that underlies Plaintiff's first claim. This Court has been unable to locate any United States law fitting the title "Product Liability Act of 1994."

4

("Count Seven"); and Conspiracy and Obstruction of Justice ("Count Eight"). Doc. #22, PageID #162–63.

### III. Analysis

Both the Dealership Defendants and GM challenge this Court's ability to consider this case through motions to dismiss based on lack of subject matter jurisdiction. Docs. 31, 36. Because federal courts are courts of limited jurisdiction, the ability to hear a case must follow from a grant of authority by Congress to do so. Most often, cases in federal court are heard under the authority granted by 28 U.S.C. § 1332 (diversity jurisdiction) or 28 U.S.C. § 1331 (federal question jurisdiction). If jurisdiction exists under either of those statutes, a court is also permitted to hear other claims that are so related that they are considered part of the same "case or controversy." 28 U.S.C. § 1367 (supplemental jurisdiction). However, supplemental jurisdiction can only apply when there are claims that independently meet the criteria to be heard in federal court.

The diversity jurisdiction statute, 28 U.S.C. § 1332, allows a federal court to hear a case that is between citizens of different states where the amount at issue is more than $75,000. When there are multiple defendants or multiple plaintiffs, the statute requires "complete diversity," whereby each plaintiff must be a citizen of a different state from each defendant. Here, Plaintiff does not specifically plead his citizenship, but lists his address as being within the state of Ohio. Plaintiff also does

not allege the citizenship of Defendants. Given Plaintiff's burden to establish subject matter jurisdiction, this alone could be fatal to this theory. Moreover, it appears that Plaintiff and several of the defendants likely are residents of Ohio, including Tony Broadstone, Nick Smith, Nick Markoff, Hunter Alsip, Richard Roe 1, Richard Roe 2, and Tom Green. If even a single individual in the list is a citizen of Ohio, diversity jurisdiction for the entire action is precluded. Because Plaintiff has failed to establish complete diversity between the parties, diversity jurisdiction will not permit this case to move forward.

Plaintiff's other avenue to bring this case is federal question jurisdiction under 28 U.S.C. § 1331. Under this method, cases involving the Constitution or federal laws may be heard in federal court. In the Third Amended Complaint, Plaintiff identifies Count One and Count Three as explicitly arising under federal law, while also listing "Federal Statutes and Claims for Jurors to Consider." Doc. # 22, PageID #159–60.

The presence of federal statutes is not necessarily sufficient to induce federal question jurisdiction. If a frivolous claim is included solely for the purpose of obtaining jurisdiction, the case may still be dismissed for lack of subject matter jurisdiction. *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 624 (6th Cir. 2010). A claim is considered frivolous if it is plainly meritless. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Ordinarily, federal question jurisdiction must be based on the

6

claims themselves, but considering Plaintiff's pro se status, the Court will consider each of the statutes that Plaintiff invokes to see if subject matter jurisdiction may exist in this Court.

### A. Magnuson-Moss Warranty Act

Plaintiff explains his claim under the Magnuson-Moss Warranty Act ("MMWA") as follows: "The defendants breached the express and implied warranties by improperly denying necessary repairs for the defective wheels. Their failure to fulfill warranty obligations directly caused financial harm, vehicle depreciation, and an accident resulting from the defective wheels." Doc. #22, PageID #159.

> In order to state an actionable claim for breach of warranty and/or violation of the Magnuson-Moss Act, a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts.

*Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). In the Third Amended Complaint, Plaintiff alleges that the vehicle "was under warranty for relevant defects and issues." Doc. #22, PageID #154. As for the second element, Plaintiff alleges that the wheels were subject to a service bulletin issued by GM and known by the dealership. *Id.* at PageID #154–55. It is unclear whether this "service bulletin" amounts to nonconformity with the warranty for the purposes of MMWA.

7

Plaintiff also alleges that "[d]espite these alerts, the underlying problem with the defective wheels was not properly addressed by the Defendants" and that the service manager at the dealership "continuously replac[ed] tires that were not the source of the problem." *Id.* These allegations are insufficient to adequately plead the third and fourth elements. A reading of the Third Amended Complaint most generous to the Plaintiff would imply only that the dealership worked on the vehicle at some point. Even with that reading, Plaintiff's allegations lack concrete articulable facts regarding (1) when the nonconformity became known, (2) when the dealer serviced the vehicle, (3) how many times the dealer attempted to fix the nonconformity, or (4) how long the dealer was given to fix the nonconformity. Without these details, Plaintiff fails to adequately plead a claim under the MMWA, and his inclusion therefore is frivolous and cannot be the basis of jurisdiction.

Moreover, even if Plaintiff's MMWA claim met the elements outlined in *Temple*, he has failed to respond to Defendants' contention that the amount in controversy requirement within MMWA has not been met.[2] Doc. #31, PageID #211–12. In fact, Plaintiff's own briefing acknowledges his awareness of this requirement. Doc. #49, PageID #310. The Sixth Circuit has stated that in MMWA cases, the

---

[2] "No Claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection... if the amount in controversy is less than the sum or value of $50,000..." 15 U.S.C. § 2310(d)(3)(B).

8

amount of controversy is calculated as "the difference between the value of the allegedly defective vehicle and the price of a replacement vehicle, less the value of any use Plaintiffs obtained from the allegedly defective vehicle." *Schultz v. General R.V. Ctr.*, 512 F.3d 754, 757 (6th Cir. 2008). Plaintiff's Third Amended Complaint does not include allegations regarding the difference in price of the vehicle, let alone allegations that the difference is greater than $50,000 as required by statute. This pleading deficiency would independently doom Plaintiff's claim under the MMWA and prevent jurisdiction in this Federal Court based on this claim.

### B. Federal Trade Commission Act

Plaintiff believes that the Federal Trade Commission Act, 15 U.S.C. § 45, is inextricably intertwined with his claims. He states that: "The defendants engaged in unfair and deceptive trade practices by concealing known vehicle defects, providing misleading information about warranty coverage, and issuing false repair reports. These deceptive actions misled the plaintiff and caused financial losses and safety risks." Doc. #22, PageID #159.

Whether Defendants' actions violate the Federal Trade Commission Act or not is immaterial because the act does not provide a mechanism for a private individual to enforce the Act. *Sefa v. Kentucky*, 510 F. App'x 435, 438 (6th Cir. 2013) (quoting *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974) ("[T]he provisions of the Federal Trade Commission Act may be enforced only by

9

the Federal Trade Commission.")). Because Plaintiff cannot enforce the Federal Trade Commission Act, any claim under that act is frivolous and cannot be the basis of jurisdiction.

### C.    Mail and Wire Fraud

Regarding the Federal Mail Fraud and Wire Fraud Statutes, 18 U.S.C. §§ 1341, 1343, Plaintiff states: "The defendants transmitted fraudulent repair orders, and warranty denials, via mail and electronic communications. These transmissions were part of a coordinated scheme to deny the plaintiff's valid warranty claims and shift financial responsibility." Doc. #22, PageID #159.

Much like Plaintiff's invocation of the Federal Trade Commission Act, the Court need not analyze the actions that Plaintiff alleges. The Sixth Circuit is clear that the mail fraud and wire fraud statutes are criminal laws and do not permit a private individual to enforce them. *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1179 (6th Cir. 1979) ("Congress did not intend to create a private cause of action for plaintiffs under the Mail Fraud Statute."); *Napper v. Anderson, Henley, Shields, Bradford and Pritchard*, 500 F.2d 634, 636 (6th Cir. 1974) ("The wire fraud act, 18 U.S.C. § 1343, is closely analogous to the mail fraud statute, 18 U.S.C. § 1341, and likewise evidences no intent of Congress to grant additional federal question jurisdiction in civil cases."). Therefore, Plaintiff cannot invoke these two statutes to provide federal jurisdiction in this Court.

### D. Racketeer Influenced and Corrupt Organizations Act (RICO)

Unlike the claims made under the Federal Trade Commission Act and the Mail and Wire Fraud statutes, the Racketeer Influenced and Corrupt Organization (RICO) Act provides an avenue for private individuals to bring claims. 18 U.S.C. § 1962. In explaining how his case invokes RICO, Plaintiff states: "The defendants participated in a coordinated scheme involving multiple predicate acts, including mail and wire fraud, to deny warranty coverage and conceal defective repairs. Their actions, taken as part of an enterprise, violated 18 U.S.C. § 1962(c) and entitle the plaintiff to treble damages and injunctive relief." Doc. #22, PageID #160.

To adequately plead a civil RICO claim, "a plaintiff must allege (1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of the above." *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 578, 594 (6th Cir. 2022). The qualifying predicate racketeering offenses are outlined in 18 U.S.C. § 1961(a) and include both mail and wire fraud. Therefore, while mail and wire fraud do not permit a private plaintiff to bring an action in and of themselves, they may permit a RICO claim, assuming the other elements are met.

However, Plaintiff has failed to adequately plead the requisite mail and wire fraud predicate offenses. Plaintiff's Third Amended Complaint and other memoranda filed in support of his arguments do not lack for allegations of

11

impropriety. Where his allegations fail is in recognizing what elements these predicate offenses require. For example, a violation of the mail fraud state requires that a fraudster engage in activity that "places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier…" 18 U.S.C. § 1341. Put simply, the alleged fraud must involve objects being sent through the United States Postal Service, or another comparable carrier.

Plaintiff fails to make any allegations concerning this requirement, instead apparently believing that any allegation of fraud is sufficient to constitute mail fraud. This is not so. Therefore, Plaintiff's allegations of mail fraud are not sufficient to adequately plead a basis for a qualifying racketeering claim.[3] Without at least two qualifying racketeering claims, the Court need not analyze the other elements of a RICO claim. Plaintiff's claims made under the Racketeer Influenced and Corrupt Organization Act are frivolous and cannot support subject matter jurisdiction in this Court.

---

[3] Plaintiff's allegations of wire fraud are also similarly insufficient to form a basis of a qualifying racketeering claim.

12

### E. Consumer Product Safety Act

The Consumer Product Safety Act (CPSA) explicitly provides a private right of action for an individual "who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule." 15 U.S.C. § 2072(a).

Plaintiff explains his invocation of the CPSA, 15 U.S.C. § 2051, et seq., as follows: "The defendants failed to address the known safety risks associated with defective wheels, despite their duty to repair or recall the defective components. This failure directly contributed to the plaintiff's accident and related damages, in violation of federal safety standards." Doc. #22, PageID #160. Plaintiff also provides a second theory of federal product safety law: "The defendants are liable under product liability law for distributing and servicing a vehicle with defective wheels that posed an unreasonable risk of harm. The vehicle's defects rendered it unsafe for its intended use, and the defendants' failure to repair or replace the defective wheels resulted in damage and injury to the plaintiff. Under 15 U.S.C. § 2072, the plaintiff has a right to bring a civil action for damages caused by a defective product." Doc. #22, PageID #160.

As an initial matter, Plaintiff presents these as two separate theories, one based in 15 U.S.C. § 2051 and one based in 15 U.S.C. § 2072. Despite Plaintiff's presentation, these are in effect the same theory. 15 U.S.C. § 2051 is the beginning of Chapter 47 of Title 15 of the United States Code and contains the Congressional

13

Findings and Declaration of Purpose for the Consumer Product Safety Act. The operative section which outlines potential civil actions is found at 15 U.S.C. § 2072.

Despite his reliance, Plaintiff fails to allege a particular consumer product safety rule required by 15 U.S.C. § 2072(a) to allow him to bring a claim under the statute. Plaintiff seemingly operates under the theory that any defective or unsafe part violates the CPSA and makes a federal case, but the statute was designed to operate much more narrowly. Instead, only rules promulgated by the Consumer Product Safety Commission may support such a claim. *See* 15 U.S.C. § 2072(a) ("Any person who shall sustain injury by... violation of a *consumer product safety rule, or any other rule or order issued by the Commission* may sue...") (emphasis added). The failure to identify a particular applicable rule supports the conclusion that Plaintiff's theory is frivolous and cannot provide jurisdiction.

### F. Supplemental Jurisdiction

Having found that neither diversity jurisdiction nor federal question jurisdiction provide valid subject matter jurisdiction over any of Plaintiff's claims, supplemental jurisdiction cannot exist and all claims must be dismissed. *Musson Theatrical, Inc. v. Federal Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996) ("If the court dismisses plaintiff's federal claims pursuant to Rule 12(b)(1) [of the Federal Rules of Civil Procedure], then supplemental jurisdiction can *never* exist.").

### G. Dismissal With Prejudice is Warranted

Plaintiff has now filed an initial Complaint (Doc. #1), a First Amended Complaint (Doc. #4), a Second Amended Complaint (Doc. #7), and a Third Amended Complaint (Doc. #22). The Second and Third Amended Complaints were both filed in response to motions to dismiss for lack of subject matter jurisdiction. Docs. #5, 12. Despite Plaintiff's numerous attempts, he has not managed to successfully plead subject matter jurisdiction in any of his complaints.

This Court recognizes that when a plaintiff proceeds pro se, their pleadings are held to less stringent standards than would otherwise apply to a party represented by counsel. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). But this leniency has limits. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). This Court must take into account Defendants' injury in continuing to defend against claims which do not belong in federal court. Defendants' prior motions effectively placed Plaintiff on notice as to the deficiencies in his theory of subject matter jurisdiction. Plaintiff's failure to address those inadequacies in his Second and Third Amended Complaints indicate that he would not be able to rectify that deficiency with further amendment of his complaint. Therefore, dismissal with prejudice is appropriate. *See Wershe v. City of Detroit, Michigan*, 112 F.4th 357 (6th Cir. 2024) ("Dismissal with prejudice is appropriate when the complaint could not be saved by an amendment" (internal quotation omitted)).

15

## IV. Conclusion

For the reasons set forth above, the Motion for Dismiss filed by the Dealership Defendants, Doc. #31, is SUSTAINED and all claims are DISMISSED WITH PREJUDICE. Because this Court lacks jurisdiction to hear this case, all other motions, Docs. #29, 36, 38, 40, 48, 53 are OVERRULED AS MOOT.

Judgment is to be entered in favor of Defendants and against Plaintiff.

The above captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: May 1, 2025

*(signature)*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE